UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**LELAND JOHN WILCOX,**

   **Plaintiff,**       **CIVIL ACTION NO. 11-14105**

 vs.

             **DISTRICT JUDGE VICTORIA A. ROBERTS**

**COMMISSIONER OF**      **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

   **Defendant.**
 _____/

## REPORT AND RECOMMENDATION

**I. RECOMMENDATION:** This Court recommends that Defendant's motion for summary judgment (docket no. 14) be granted in part, Plaintiff's motion for remand (docket no. 13) be granted in part, and the instant case be remanded for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g) as discussed in this recommendation.

**II. PROCEDURAL HISTORY:**

  Plaintiff filed an application for a period of disability and disability insurance benefits on September 22, 2009, alleging disability beginning July 6, 2009. (TR 136). The Social Security Administration denied benefits and Plaintiff filed a timely request for a *de novo* hearing. On March 17, 2011 Plaintiff appeared with counsel in Jackson, Michigan and testified at a video hearing held by Administrative Law Judge (ALJ) Rebecca LaRiccia, who presided over the hearing from Chicago, Illinois. (TR 29-72). Vocational Expert (VE) James Radke also appeared and testified at the hearing, as did Plaintiff's wife Gwen Wilcox. In a May 3, 2011 decision the ALJ found that Plaintiff was not entitled to disability benefits because the evidence showed that he remained

1

capable of performing a significant number of jobs existing in the national economy. (TR 8-24). The Appeals Council declined to review the ALJ's decision and Plaintiff filed a timely complaint for judicial review. The parties filed cross motions which are currently before the Court.

### III.  PLAINTIFF'S TESTIMONY, WITNESS TESTIMONY, AND RECORD EVIDENCE

#### A.  Plaintiff's Testimony

Plaintiff was forty-three years old at the time of his alleged onset of disability. He testified that he was employed as a welder and a gas lineman for a utility company. (TR 46, 149). He has a driver's license but reports that he drives very little. (TR 51).

Plaintiff testified that daily headaches and knee pain rendered him completely unable to perform his job as of July 2009. (TR 34-35). He testified that he has a bulging disc that causes neck pain and prevents him from titling his head back, and he complains of blurry vision that comes on with headaches or when he has to read or concentrate. (TR 38-41). Plaintiff testified that he has tremors that make it difficult for him to reach overhead or in front of him. (TR 37). He states that he has a hard time picking up items like a pen because his hands cramp and swell. (TR 37-38).

Plaintiff testified that he uses a walker, a cane, and on occasion a wheelchair to aid with ambulation. (TR 35, 53). He rated his pain level at an eight to nine on a ten point scale. (TR 36). Plaintiff states that moving provides headache relief but causes lower back pain. (TR 41-42). He testified that he lays down for one to two hours every day to help relieve pain. (TR 42). He also plays with his dog or performs limited housework like washing dishes or sweeping to achieve limited pain relief, although he states that this form of activity may bring on leg, back, and arm pain. (TR 42-43). Plaintiff testified that he takes walks, plays with his dog, and uses a Wii Fit for exercise. (TR 45-46). He states that he is able to walk ten to fifteen minutes before he needs to sit

down, and he can sit approximately thirty minutes before experiencing lower back and leg pain. (TR 46, 56-57).

Plaintiff testified that he sees two psychologists and takes medication for depression and anxiety. (TR 48-49). He states that he has bladder and bowel incontinence. (TR 49). He claims that his wife helps with his personal hygiene but admits that he is able to maintain his personal hygiene on his own. (TR 53-54). Plaintiff testified that he watches movies on television but he has no ability to recall what he is watching. (TR 44). He states that he restores a boat as his hobby. (TR 52-53).

**B.     Witness Testimony**

Plaintiff's wife testified that Plaintiff's pain level prevents him from attending church more frequently than once every four to six weeks. (TR 58-59). She states that he is wheeled in and out of the church service several times during the course of the service because he can't sit long. (TR 59). She testified that he feeds his cat and dog on occasion, but he is unable to wash dishes because he is unable to stand long without pain. (TR 59-60). She testified that Plaintiff can stand for two to three minutes at a time to play fetch with his dog. (TR 60). Plaintiff's wife states that he needs reminders for appointments and help managing his medications. She testified that she occasionally helps him in and out of the tub or on and off of the toilet, and she sometimes helps him with his shoes and socks. (TR 61-62).

**C.     Medical Evidence**

The transcript contains a lengthy medical record which the undersigned has completely and thoroughly reviewed. Only limited portions of the medical record will be summarized below. The medical record reveals that Plaintiff has a history of cervicogenic headache, chronic cervicalgia,

intractable migraine, degenerative disc disease in the cervical and lumbar spine with chronic low back pain, fibromyalgia, diabetes, major depressive disorder, generalized anxiety disorder, substance abuse, and pain disorder.

The record shows that Plaintiff received physical therapy and psychotherapy counseling from the Michigan Head, Pain & Neurological Institute in Ann Arbor, Michigan in 2009. (TR 231-47, 269-78). A physical therapy discharge note dated November 13, 2009 shows that Plaintiff presented with variable levels of function that actually declined during the course of physical therapy. (TR 567).

Plaintiff received occupational therapy in October 2009 . (TR 317). The initial evaluation reveals that Plaintiff could feed himself with some difficulty; groom, bathe, and dress himself with some difficulty; had an impaired ability to use the toilet; and had no ability to manage his medications. (TR 318). The therapist found that Plaintiff presented with bilateral upper extremity weakness, impaired fine motor coordination, impaired sustained activity tolerance, impaired balance, increased pain, and an inability to perform activities of daily living. (TR 319). The therapist also found that Plaintiff had good muscle tone, he ambulated with independence using a wheeled walker, transferred with independence, and had good static standing and sitting balance. Plaintiff reported that therapy helped him perform activities of daily living and toileting to a better degree. (TR 344). By the time Plaintiff was discharged from occupational therapy, he was able to demonstrate independence in feeding, simple meal preparation, grooming and toileting, although he required continued assistance with medication management, complex meal planning, and managing personal household possessions and the environment. (TR 564).

Plaintiff was evaluated by Dr. Anthony Chiodo and Dr. Tiffany Williams of the Spine

Program, Department of Physical Medicine and Rehabilitation in October 2009. The practitioners observed that Plaintiff had no loss of gait balance, full strength in his bilateral upper extremities and left lower extremity, and brisk deep tendon reflexes in the biceps, triceps, brachioradialis, patella, and Achilles. (TR 344). The practitioners documented that Plaintiff was not completely disabled and recommended that he ease back into light duty in his occupation as a welder. (TR 345).

Dr. Donald Kuiper completed a Physical Residual Functional Capacity Assessment in December 2009. (TR 399-406). Dr. Kuiper opined that Plaintiff could lift or carry twenty pounds occasionally and ten pounds frequently; sit, stand, and walk six hours in an eight hour workday; with unlimited push and pull activities. (TR 400). He opined that Plaintiff could occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; and frequently balance, stoop, kneel, crouch, and crawl. (TR 401). He determined that Plaintiff had no manipulative, visual, communicative, or environmental limitations. Dr. Kuiper based his conclusions on evidence showing that an upper extremity EMG dated March 19, 2009 was normal; an August 24, 2009 MRI of the lumbar spine revealed multiple level disc protrusions; and progress notes from Dr. James Weintraub showed that Plaintiff was not a surgical candidate. (TR 401). He also noted that Plaintiff's lumbar range of motion was within normal limits with pain and he had decreased strength throughout his extremities, yet in October 2009 he was noted to ambulate with good heel strike on right lower extremity using a wheeled walker. (TR 406). Dr. Kuiper noted that Plaintiff took multiple mind altering drugs including Cymbalta, Klonipin, Oxycodone, Trileptal, and Neurontin. (TR 401). He opined that there was no medical documentation explaining Plaintiff being in a wheelchair. Dr. Kuiper also opined that Plaintiff's statements were only partially credible as the number of drugs he was taking could contribute to many of his alleged symptoms and the medical

5

evidence of record did not support the need for all of the medications. (TR 404).

On January 21, 2010 John Jeter, MA, LLP, LLMSW evaluated Plaintiff on behalf of the state disability determination service. (TR 420). Mr. Jeter observed that Plaintiff's posture was within normal limits, his grooming and hygiene were appropriate, and his vision did not present any difficulties during the assessment. Mr. Jeter found that Plaintiff's thought content was appropriate, he was able to recall five numbers forward and three numbers backward, recall three of three objects after a three minute delay, and recall the name of one of his early grade school teachers. Mr. Jeter concluded that there was no impairment in Plaintiff's ability to understand, recall, and carry out simple or complex directions; no impairment in his ability to make judgments with simple work related decisions; and no impairment in his ability to interact with the public, supervisors, or co-workers. Mr. Jeter found that Plaintiff was always adjusting to pain and movement, was subject to relapses, and may experience episodes of decompensation related to work pressure. (TR 424). He also found that Plaintiff should be restricted to work that involves brief, superficial interactions with others.

Dr. Thomas Tsai completed a Mental Residual Functional Capacity Assessment on January 28, 2010. (TR 425). Dr. Tsai found that Plaintiff was moderately limited in his abilities to: understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; accept instructions and respond appropriately to criticism; and respond appropriately to changes in the work setting. (TR 425-26). In all other areas, he found that Plaintiff was not significantly limited. Dr. Tsai determined that Plaintiff was capable of performing simple one to two step tasks on a routine and regular basis. (TR 427). In a Psychiatric Review Technique, Dr. Tsai concluded

that Plaintiff was mildly limited in activities of daily living; moderately limited in maintaining social functioning and concentration, persistence, or pace; and had no episodes of decompensation. (TR 439). He found that Plaintiff should be able to perform unskilled tasks. (TR 441).

Between January and March 2010 Dr. Theresa Oney-Marlow completed three Medical Information/Work Status Reports for Plaintiff's employer. (TR 450-52). In the reports, Dr. Oney-Marlow documented that Plaintiff was limited to lifting and carrying ten pounds unassisted but could only do so five times per hour, was limited to sitting thirty minutes per hour, standing and walking fifteen minutes per hour, pushing or pulling up to ten pounds, with occasional bending or stooping, and no climbing of ladders or stairs. She further noted that Plaintiff's ability to reach above his shoulder or extend his hands and arms in any direction, ability to grip, grasp, hold or turn objects with his hands, and his ability to perform tasks requiring accurate and quick finger movements was limited. Dr. Oney-Marlow checked a box in her report dated March 26, 2010 that Plaintiff was completely unable to work at the time, but noted that his prognosis was good.

In addition to the above, the record shows that Plaintiff had right-sided weakness with right-sided foot drag and he was observed to walk without an assistive device, although it was noted that he usually did walk with an assistive device. (TR 315). In April and June 2010 Plaintiff was observed to walk with a straight back, erect, and only moderate reduction in gait speed. (TR 649, 658, 664). An MRI of the thoracic spine dated May 2010 was unremarkable. (TR 553-54). In addition, the medical record shows that Plaintiff's vision examinations were unremarkable despite his complaints of vision disturbances. (TR 538, 560).

**IV.    VOCATIONAL EXPERT TESTIMONY**

The ALJ asked the VE to testify whether jobs were available for an individual with

Plaintiff's age, education, and past relevant work experience who requires sedentary work, including that the person cannot climb ladders, ropes, or scaffolds but can occasionally climb stairs; cannot kneel or crawl but can occasionally stoop; who must avoid work related hazards, such as unprotected heights and dangerous moving machinery; and who must avoid moderate exposure to vibration and uneven surfaces. (TR 66). The VE testified that the hypothetical individual could not perform Plaintiff's past work, but could perform sedentary, unskilled work as a general office clerk, receptionist, or order clerk, comprising 3,050 jobs in Eastern and Central Michigan. (TR 66-67).

The ALJ added that the individual can understand, remember and carry out simple instructions, respond appropriately to supervision, coworkers and work situations, deal with changes in routine work settings, and maintain attention and concentration to perform one to two step tasks on a routine basis. (TR 67). The VE testified that these limitations would be work preclusive because there are no one to two step jobs available at the sedentary level. (TR 68). The VE also testified that there would be no work available if the person was off task fifteen percent of the work day or missed two days of work each month. (TR 69-70).

Next, the ALJ asked the VE to assume an individual with Plaintiff's age, education, and past work experience who requires sedentary work, and who can lift and carry ten pounds occasionally and five pounds frequently; who can sit thirty minutes per hour, and stand and walk fifteen minutes per hour; who can occasionally bend and stoop, but cannot climb ladders, or stairs; and who is limited to frequently reaching, gripping, grasping, and performing fine manipulation. (TR 68). The VE testified that this individual could perform the previously identified sedentary, unskilled jobs of general office clerk, receptionist, or order clerk. (TR 69). The VE further testified that there would be no competitive work available if the individual was limited to occasional reaching, gripping,

grasping and fine manipulation. (TR 69).

## V.  ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff has not engaged in substantial gainful activity since his alleged onset date of July 6, 2009, and suffers from the severe impairments of cervicogenic headaches and cervicalgia, degenerative disc disease, diabetes, fibromyalgia, and adjustment disorder with depressed and anxious mood, he did not have an impairment or combination of impairments that meets or equals the Listing of Impairments. (TR 10-12).

The ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform sedentary work, except that he cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can do no kneeling or crawling but can occasionally stoop; and can understand, remember, and carry out work at an unskilled level. The ALJ also concluded that Plaintiff should avoid hazards such as unprotected heights and dangerous moving machinery, and avoid even moderate exposure to vibrations and uneven surfaces. (TR 12-22). The ALJ concluded that because Plaintiff is not capable of performing his past relevant work as a welder and lineman, but could perform jobs that exist in significant numbers in the national economy, Plaintiff is not under a disability as defined in the Social Security Act. (TR 22-24).

## VI.  LAW AND ANALYSIS

### A.  Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir.

1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## B.     Framework for Social Security Disability Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. he was not engaged in substantial gainful employment; and
2. he suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. he did not have the residual functional capacity to perform his past relevant work.

20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented him from doing his past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. 20 C.F.R. § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y*

*of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations omitted).

**C.     Analysis**

Plaintiff first argues that remand is required because the ALJ failed to properly evaluate three treating source opinions of Dr. Oney-Marlow. In the reports at issue, Dr. Oney-Marlow limited Plaintiff to sitting for thirty minutes per hour, walking or standing for fifteen minutes per hour, with limited upper extremity use in reaching, gripping, grasping, holding, and fingering. In addition, the reports state that Plaintiff was limited to lifting a maximum of ten pounds no more than five times per hour. Dr. Oney-Marlow also checked a box stating that Plaintiff was completely unable to work at the time. Plaintiff contends that the ALJ failed to follow the procedural requirements of 20 C.F.R. § 404.1527 and failed to provide good reasons for rejecting Dr. Oney-Marlow's opinions.

The Commissioner has imposed "certain standards on the treatment of medical source evidence." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citing 20 C.F.R. § 404.1502). Under the treating source rule, the ALJ must "give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.' " *Id.* If the ALJ does not give controlling weight to the treating source's opinion, he "must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.' "

*Id.* (citing *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004)). *See also* 20 C.F.R. § 404.1527(c)(2).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." *Id.* (citation and internal quotation marks omitted). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.' " *Id.* (citation omitted). The Sixth Circuit has "made clear" that it will remand the Commissioner's determination if it has not provided good reasons for the weight it has given to a treating physician's opinion. *Id.* at 939 (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

If the ALJ fails to follow an agency rule or regulation, then the ALJ's failure "denotes a lack of substantial evidence, even where the [ALJ's conclusion] may be justified based upon the record." *Id.* at 939-40 (citation omitted). But a failure to follow the treating source rule can be deemed "harmless" if the "treating source's opinion is so patently deficient that the Commissioner could not possibly credit it[.]" *Id.* at 940 (citation omitted). "An opinion may be patently deficient if the treating source offers no explanation to support it." *Fleming v. Comm'r*, No. 10-25, 2011 WL 3049146 at *9 (E.D. Tenn. July 5, 2011) (citing *May v. Astrue*, 09-00090, 2009 WL 4716033 at *8 (S.D. Ohio Dec. 9, 2009) (finding treating source opinion patently deficient where treating source simply checked boxes about the plaintiff's alleged disability and failed to provide supporting explanations or objective evidence.").

It is well-established that the ultimate issue of disability is reserved to the Commissioner, and not the treating physician. *Kidd v. Comm'r*, 283 Fed. Appx. 336, 341 (6th Cir. 2008). "Thus,

when a treating physician offers an opinion on an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight." *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)).

Here, the ALJ considered the entire case record and discussed in detail the medical opinions of Plaintiff's treating and non-treating physicians. The ALJ acknowledged that Dr. Oney-Marlow had a treating relationship with Plaintiff and noted that Plaintiff sought treatment from Dr. Oney-Marlow in November 2009 and continued treating with her into 2010. (TR 15-16). The ALJ also noted that the conclusions made in Dr. Oney-Marlow's reports were not supported by objective physical findings. (TR 21). Indeed, in the three reports at issue, Dr. Oney-Marlow fails to offer any explanation to support her conclusions.

The ALJ cited at length specific examples in the record which were not fully consistent with Dr. Oney-Marlow's opinions. For example, the ALJ addressed evidence showing that Plaintiff was observed to have normal muscle strength, normal sensory and deep tendon reflexes, a normal rate and cadence when walking with no imbalance, and a stiff gait although otherwise normal ability to tandem heel and toe walk. (TR 17). The ALJ noted that Plaintiff was observed ambulating with a cane with only moderate reduction in gait speed. (TR 17). She discussed medical reports stating that there were no objective findings to suggest an issue with the claimant's central or peripheral nervous system that could cause Plaintiff's ambulating difficulties. (TR 17). The ALJ addressed medical evidence showing that other than evidence of degenerative disc disease, there was no evidence to support a neurological explanation for Plaintiff's symptoms and no independent record substantiating Plaintiff's claims of falls. (TR 15-17). The ALJ also discussed a neurological evaluation at University of Michigan Hospitals in July of 2010 which showed that Plaintiff presented

13

with no swelling or tenderness to his extremities, near normal strength throughout his body, normal reflexes, and an intact memory with normal concentration. (TR 18).

Although the ALJ assigned only limited weight to Dr. Oney-Marlow's three Medical Information/Work Status Reports dated 2010, she did so only after stating that the limitations in Dr. Oney-Marlow's reports were based on Plaintiff's subjective complaints and on the doctor's own findings of weakness during her examinations, rather than on any objective physical findings. (TR 21). The undersigned concludes that the ALJ properly addressed the factors in 20 C.F.R. § 404.1527(c)(2) and provided good reasons for affording limited weight to Dr. Oney-Marlow's reports. The ALJ's treatment of Dr. Oney-Marlow's reports should not be disturbed.

Next, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ formulated an inaccurate hypothetical that did not accurately portray Plaintiff's moderate deficiencies in maintaining concentration, persistence or pace. Plaintiff asks the Court to reverse the Commissioner's decision and remand the case for further evaluation of Plaintiff's RFC to permit a more complete consideration of Plaintiff's actual limitations.

The ALJ is required to present a hypothetical question that accurately portrays the plaintiff's individual physical and mental impairments in order for the VE's response to constitute substantial evidence. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). When the ALJ makes a finding that a claimant has moderate limitations with concentration, persistence or pace, "but does not specifically include that limitation in the hypothetical question, the question is whether the ALJ used adequate alternate concrete job restrictions in the hypothetical question that suitably accommodated the worker's ... limitations." *Tinker v. Astrue*, No. 08-11675, 2009 WL 3064780, at *8 (E.D. Mich. Sept. 22, 2009). In other words, the ultimate question is whether the

14

ALJ's decision was supported by substantial evidence. *Lewicki v. Comm'r*, 09-11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010). *See also Schalk v. Comm'r*, 10-13894, 2011 WL 4406824, at *11 (E.D. Mich. Aug. 30, 2011) (discussing how "there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of 'unskilled work' but excludes a moderate limitation in concentration. Rather, [the court] must look at the record as a whole and determine if substantial evidence supports the ALJ's RFC."). *See also Roberts v. Comm'r*, No. 10-14064, 2011 WL 4407221, at *8 (E.D. Mich. Aug. 8, 2011) (noting that "[t]here are cases ordering remand where an ALJ's hypothetical does not include a specific reference to moderate limitations in concentration or pace and only limits the hypothetical individual to unskilled work or simple, routine tasks–but also other cases that have found that an ALJ formed an accurate hypothetical by limiting the claimant to unskilled work and omitting a moderate concentration or pace limitation.").

Limitations in concentration, persistence, or pace may result in Plaintiff being unable to meet quotas, stay alert, or work at a consistent rate of speed. *Edwards v. Barnhart*, 383 F.Supp.2d 920, 930-31 (E.D. Mich. 2005).

Here, the ALJ determined that Plaintiff had moderate difficulties with concentration, persistence, or pace and fashioned an RFC that limited Plaintiff to unskilled work with no other limitations. In her first hypothetical to the VE, the ALJ did not incorporate any limitations that corresponded to Plaintiff's moderate deficits in concentration, persistence or pace. In her second hypothetical to the VE, the ALJ included the limitation that the individual could understand, remember, and carry out simple instructions, respond appropriately to supervision, coworkers and work situations, and maintain attention and concentration to perform one to two step tasks on a routine basis. The VE testified that work would be precluded under the second hypothetical because

there were no available jobs for an individual that required sedentary work if the individual was capable of only one to two step tasks.

In her review of the medical evidence, the ALJ noted that Plaintiff responded well to instructions on a mental status examination, was cooperative, motivated, verbally responsive, could perform serial threes to seventy six with accuracy, and had a good fund of general knowledge. (TR 19). Nevertheless, the ALJ found sufficient evidence to conclude that Plaintiff had moderate deficits in concentration, persistence, or pace. Defendant contends that the ALJ made these findings based on her own conclusions as opposed to adopting an examiner's opinion, as she was entitled to do. (Dkt 14 at p.7). Indeed, the record does not contain a medical opinion that finds moderate deficiencies in concentration, persistence or pace, yet concludes that Plaintiff is capable of sustained work. The Mental RFC and Psychiatric Review Technique of Dr. Tsai would perhaps come the closest to this recommendation. Yet in Dr. Tsai's evaluations, he concludes that Plaintiff is moderately limited in his ability to maintain concentration, persistence, or pace, but maintains the ability to perform unskilled tasks provided they are one to two step tasks. (TR 427, 439-41). As indicated, the VE testified that a requirement of simple one to two step tasks in the sedentary work category was work preclusive. *See Cwik v. Comm'r*, No. 10-15121, 2012 WL 1033578, at *10 (E.D. Mich. Feb. 23, 2012) (distinguishing cases that do not order remand where a medical professional finds moderate difficulties in concentration, persistence or pace yet still concludes the claimant is capable of performing sustained work, from those cases that do order remand for further proceedings when the ALJ makes a finding of moderate limitations in concentration, persistence or pace without the benefit of a medical opinion finding that the claimant could perform sustained work despite his moderate deficits).

The undersigned finds on the basis of this record that the ALJ did not properly account for Plaintiff's limitations in concentration, persistence or pace. The undersigned therefore recommends that this matter be reversed and remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for a determination of what if any additional limitations are needed to address Plaintiff's deficits in concentration, persistence or pace.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: January 9, 2013         s/ Mona K. Majzoub
                                              MONA K. MAJZOUB
                                              UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: January 9, 2013         s/ Lisa C. Bartlett
                                              Case Manager